IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ROBERT W. WATSON, #365712 | § | |
| VS. | § | CIVIL ACTION NO. 9:11cv195 |
| LANCE M. PHILLIPS, ET AL. | § | |

<u>MEMORANDUM OPINION AND
ORDER OF DISMISSAL</u>

Plaintiff Robert W. Watson, previously a prisoner confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Lt. Lance M. Phillips and Sgt. Kendrick A. Anderson. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

<u>Facts of the Case</u>

The original complaint was filed on November 29, 2012. The Plaintiff alleged that he was the victim of assaults and retaliation. On April 12, 2012, the Court conducted an evidentiary hearing in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff was given the opportunity to fully discuss the factual basis of his claims. Several prison officials were in attendance during the hearing, including Assistant Warden Stephen Sperry, Nurse James Fields and Regional Grievance Supervisor Laurie Parker. All of the witnesses testified under oath.

The Plaintiff's complaints concern matters that occurred on August 9, 2011 and August 12, 2011. He asserted that he had previously experienced problems with the Defendants. In 2005, he told Warden Reescano that Anderson's sister was involved with an inmate. In 2009, he wrote a statement alleging that Anderson had assaulted an inmate. Anderson told him that "if I ever make rank, I'm

1

going to dust your ass." In 2010, the Plaintiff reported Phillips for accepting food from an inmate. Phillips then removed the Plaintiff's job restrictions, although Captain Martinez intervened in that matter and restored the restrictions. Phillips subsequently told the Plaintiff that he was going "to make the [remainder] of your time miserable." Phillips had also threatened the Plaintiff with disciplinary cases and had his cell searched for fourteen days straight.

This brings us to the Plaintiff's actual complaints. On August 9, 2011, he accidentally tripped over a mop bucket and spilled water on the floor. Plaintiff testified that he has degenerative joint disease and his knee just gave out. Phillips told Anderson to file disciplinary charges against Plaintiff for creating a disturbance. Anderson told the Plaintiff to stay down on the floor, and he placed handcuffs on him. Anderson sent for a camera. While the Plaintiff was still lying on the floor, Anderson allegedly maliciously and sadistically kneed him on his left arm, shoulder and back, causing harm without any provocation. The Plaintiff testified that he was the victim of excessive use of force and retaliation.

Anderson transported the Plaintiff to prehearing detention. While taking pictures of his injuries, Anderson pulled off the Plaintiff's clothes. Plaintiff characterized Anderson's actions as taking pornographic pictures of him. The Plaintiff tried to stop him, but Anderson pushed him back down. He asserted that Anderson's acts of pushing him and stripping off his clothes were the second and third excessive uses of force. The Plaintiff asserted that Anderson was disciplined. He testified that his injuries included low back problems, a pinched nerve and pain in his elbow. A doctor prescribed him medication and gave him an injection.

The Plaintiff testified that the Defendants came back to his cell about thirty minutes later. They took his property, including his food from the commissary. He filed a grievance, but it was returned because he had filed an excessive number of grievances.

2

On August 12, 2011, the Plaintiff was in the shower drying off when he felt something hit his left elbow. He turned around and saw Phillips standing there with a metal food slot bar. Phillips told him that he had heard about his grievances. Phillips then spat in his face and walked out of the area. The Plaintiff stated that he still has pain in his elbow. A nurse recorded that he had self-inflicted injuries.

Nurse Fields testified from the Plaintiff's unit medical records. With respect to a use of force physical examination on August 9, 2011, a nurse recorded that the Plaintiff had no visible injuries or respiratory distress. A subsequent cellside examination documented no visible injuries. On August 23, 2012, Dr. Smith found that the Plaintiff was suffering from chronic dorsal spine pain and degenerative joint disease. Dr. Smith ordered a Kenalog injection. On September 19, 2011, a physicians assistant examined the Plaintiff regarding complaints about pain from the use of force incident. He noted no swelling nor any visible injuries, although there was some tenderness. Nurse Fields testified that the first complaint about pain in the elbow was documented on September 19, 2011.

Regional Grievance Supervisor Parker testified that the grievance records reveal that the Plaintiff exhausted his use of force claims against both Anderson and Phillips. The Plaintiff did not exhaust his other claims. It is noted that the Plaintiff attached his grievance records to the original complaint, and his grievances only concerned force being used against him.

## Defendants' Motion for Summary Judgment

The Plaintiff was permitted to proceed with his claims following the *Spears* hearing. The Defendants filed an answer (docket entry #21) on May 17, 2012. They filed a motion for summary judgment (docket entry #45) on August 27, 2012. They argued that they are entitled to summary judgment based on qualified immunity and Eleventh Amendment immunity. In support of their

3

motion, they attached a number of exhibits, including a major use of force report, relevant medical records, shift history reports and logs, classification records, grievance records, use of force and classification plans, and affidavits from the Defendants.

Defendant Anderson provided his own version of the facts in his affidavit. On August 9, 2011, he was working in the chow hall when he received a request for help from the picket. He arrived on the scene and observed the Plaintiff lying on the floor in hand restraints. The Plaintiff was ordered several times to stand up and walk to D-Line. He refused to obey the orders. His refusal to obey these legitimate orders resulted in the use of force. Officers had to lift him off of the floor and place him on a gurney. He struggled with the officers as they placed him on the gurney. The Plaintiff was taken to a cell, and Anderson had the officers place him face down on the floor. Pursuant to TDCJ policy, strip searches are conducted after major uses of force. The Plaintiff was uncooperative and refused to obey orders. Anderson retrieved a 911 tool to remove the Plaintiff's clothes. Anderson then took pictures of the Plaintiff. At one point, he placed his hand on the Plaintiff to keep him from turning over so that he could take a photograph. The other officers restrained the Plaintiff while Anderson was taking pictures. Anderson stated that after he finished taking pictures, he had the other officers, except for Askew, leave the cell, and then he removed the Plaintiff's hand restraints. Nurse Martin gave the Plaintiff a cell-side use of force physical, and then the incident was over. Anderson asserted that force was used in a good faith effort to restore order and security. He noted that the Plaintiff posed a security risk at several points in time because of his noncompliance, thus the officers had to regain control over the situation.

Anderson addressed the Plaintiff's claim that the Plaintiff informed a warden in 2005 about one of his sisters having an involvement with an inmate. He noted that he has two sisters. Neither

4

works for TDCJ. He does not have any knowledge about his sisters being involved with an inmate. He was never aware that the Plaintiff informed anyone that one of his sisters was involved with an inmate. He was also unaware that the Plaintiff made a statement that he assaulted someone in 2009.

The major use of force report reveals that Anderson received a letter of instruction after the incident for procedural violations by forcibly taking photographs and placing his knee on the Plaintiff's shoulder area while removing the hand restraints. It was noted that the level of force used was minor and did not result in any injuries. The letter of instruction was given to him so that he would employ appropriate actions in the future. Anderson was not disciplined.

Defendant Phillips stated in his affidavit that he has never been aware of a grievance or report filed against him for accepting food from an inmate. Furthermore, it is customary for inmates who work in the chow hall to bring food to officers when the officers were unable to make it to the Officer Dining Room. Officers are not disciplined for receiving food in this manner, and he has never been disciplined for accepting food from an inmate. He noted that he does not have the authority to unilaterally assign an inmate to a job in violation of his medical restrictions. Moreover job assignments are made by the unit classification committee, and he had not been on a unit classification committee for over seven years. He also specified that he was not directly responsible for searching inmate's cells.

On August 9, 2011, Phillips observed the Plaintiff pushing a mop bucket. When the Plaintiff approached Sgt. Anderson, he kicked over the mop bucket and his property fell in the water. Phillips stated that he instructed the Plaintiff to mop up the water. After Anderson escorted the Plaintiff to prehearing detention, he inventoried the Plaintiff's property. Phillips noted that he is a lieutenant in the general population, and he had no occasion to visit the Plaintiff while he was confined in

5

prehearing detention. He added that he does not check out food tray slot openers since he does not work in segregation. He asserted that he was not aware of any grievances filed by the Plaintiff about an incident that allegedly occurred on August 12, 2012. He finally asserted that strip searches are conducted as a matter of policy following a use of force incident.

The Defendants' legal arguments shall be fully discussed in the Discussion and Analysis portion of this opinion.

Plaintiff's Response

The Plaintiff filed a response (docket entry #62) to the motion for summary judgment on October 17, 2012. The documentation submitted in support of the response included affidavits, calendars, security prison records, medical records, and portions of the use of force plan. He restated the basic facts as were presented in the original complaint and his testimony during the *Spears* hearing. His legal arguments will be fully discussed in the Discussion and Analysis portion of this opinion.

Defendants' Reply

The Defendants filed two replies (docket entry nos. 61 and 63) to the response. They pointed out how the response failed to comply with the Federal Rules of Civil Procedure. They noted that the Plaintiff numbered each paragraph in his response, and they replied to each paragraph. Once again, their legal arguments will be fully discussed in the Discussion and Analysis section of this opinion.

Discussion and Analysis

Before addressing the motion for summary judgment, response and replies, the Court shall address exhaustion of administrative remedies. In the original complaint, in section four, the Plaintiff listed Phillips and Anderson as the defendants. He asserted that they assaulted him without any provocation. He attached grievance records to the complaint which showed that he exhausted his

claims that he had been assaulted by the Defendants. The nature of the Plaintiff's claims was clear up to this point, however, his claims became less clear due to his discussion of other matters in section V and a section entitled "Parties Capacity." He primarily claimed that he was the victim of retaliation. Nonetheless, the grievance records attached by him to the complaint do not include any claims other than the assault claims.

The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). After reviewing the provision, the Supreme Court unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The failure to exhaust will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id.* at 84. More recently, the Supreme Court reiterated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Fifth Circuit has held, however, that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appeared on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Torns v. Mississippi Dept. of Corrections*, 301 Fed. Appx. 386, 389 (5th Cir. 2008). A dismissal of a complaint for failure to state

7

a claim, predicated on failure to exhaust, counts as a strike for purposes of 28 U.S.C. § 1915(g). *Emmett v. Ebner*, 423 Fed. Appx. 492, 493-94 (5th Cir. 2011).

In the present case, it was clear from the face of the complaint that the Plaintiff exhausted his use of force claims. He attached his grievance records, which revealed that he exhausted such claims. There is no indication that he exhausted any other issues. During the *Spears* hearing, Regional Grievance Supervisor Parker confirmed that he had exhausted his use of force claims and noted that nothing else was exhausted. Her statement is consistent with the grievance records contained in Defendants' Exhibit H. The Defendants' answer raised the affirmative defense of failure to exhaust, but they did not otherwise develop the issue. In light of the Plaintiff's original complaint and the grievance records, it is clear that the Plaintiff exhausted only his excessive use of force claims and the remaining claims should be dismissed for failure to state a claim, predicated on a failure to exhaust, pursuant to 28 U.S.C. § 1915A(b)(1).

This brings us to the Defendants' motion for summary judgment. A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere

8

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 Fed. Appx. 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 Fed. Appx. 330, 332 (5th Cir. 2011).

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature

truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The Plaintiff's primary claim is that he was assaulted, which amounts to an Eighth Amendment claim for excessive use of force. The Defendants asserted that there are three essential elements to an excessive use of force claim: (1) malicious and sadistic force (2) caused the inmate (3) an injury. *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). They correctly noted that the ultimate question of whether an officer's actions are taken to inflict unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). They argued that the Plaintiff has not shown that they used force maliciously or sadistically to harm him and that he cannot prevail on an excessive use of force claim against them. They further argued that they are entitled to summary judgment because the Plaintiff suffered no injury or, at most, only a *de minimis* injury. *Hudson v. McMillian*, 503 U.S. at 9-10; *Hoffman v. Stulga*, 464 Fed. Appx. 229, 232 (5th Cir. 2011); *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

The Defendants' discussion of the case law involving excessive use of force claims was accurate as to general principles. They correctly noted that the Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 7. Citing *Whitley*, the Supreme Court listed a number of factors to consider in analyzing an excessive use of force claim, including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably

10

perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.* On remand, the Fifth Circuit concluded that the five factors were relevant to the use of force inquiry. *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). *See also Kiser v. Dearing*, 442 Fed. Appx. 132, 134 (5th Cir. 2011); *Williams v. Valenti*, 432 Fed. Appx. 298, 301 (5th Cir. 2011).

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10. Following *Hudson*, the Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). Several decisions provide guidance in determining whether an inmate's physical injuries were *de minimis*. In *Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997), the Fifth Circuit held that a sore, bruised ear lasting for three days that resulted from an officer twisting the inmate's ear was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit. In *Gomez v. Chandler*, 163 F.3d at 924-25, the Fifth Circuit held that injuries

consisting of "cuts, scrapes, contusions to the face, head and body" that resulted from an inmate being knocked down, punched and kicked and that required medical treatment were more than *de minimis*.

The Fifth Circuit has additionally held that the question of whether the force used was more than *de minimis* must be evaluated in the context in which the force was deployed. In *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996), the Fifth Circuit explained that the amount of injury necessary to satisfy the requirement of some injury and to establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. In *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999), the Fifth Circuit held that what constitutes an injury is subjective and defined entirely by the context in which the injury arises. Two chokings occurred in *Williams*. The first choking occurred when the officer attempted to search the plaintiff's mouth for cocaine pursuant to a search warrant, which resulted in fleeting dizziness, temporary loss of breath and coughing. The Fifth Circuit held that the use of force did not rise to the level of a constitutional violation under the circumstances. *Id.* at 704. The second choking was the product of a malicious choking. The plaintiff again suffered dizziness, coughing, and a loss of breath. The Fifth Circuit held that the injuries, although the same as before, qualified as a cognizable injury since the officer's actions were the product of maliciousness, as opposed to a legitimate search. *Id.* The Fifth Circuit specifically noted that it was required to accept a plaintiff's version of events as true for purposes of summary judgment. *Id.*

In the present case, the Plaintiff initially alleged that Anderson maliciously and sadistically kneed him on his left arm, shoulder and back while keeping him on the ground. Later, in prehearing detention, Anderson forcibly removed the Plaintiff's clothes to take pictures of him and pushed him

back down while taking pictures of him. His injuries included low back problems, a pinched nerve and pain in his elbow.

Anderson, on the other hand, asserted that the Plaintiff struggled and refused to comply with orders. He used a 911 tool to remove the Plaintiff's clothes. He held the Plaintiff down to keep him from turning over so that he could take photographs. He noted that the strip search was conducted pursuant to policy. The Plaintiff was held down because he would not cooperate. Anderson asserted that the Plaintiff created a security risk at times because of noncompliance, thus they had to regain control over him by restraining him. Anderson was given a letter of instruction because of procedural errors, but he was not disciplined. Anderson asserted that his "actions during the use of force were taken in a good faith [effort] to restore order and security to the unit."

The Plaintiff's injuries from the incident was minor. Nurse Fields testified during the *Spears* hearing that the medical records revealed that the Plaintiff had no visible injuries or respiratory distress. A subsequent cellside examination documented no visible injuries. The Plaintiff testified that he had preexisting joint disease. Dr. Smith cited this condition and gave the Plaintiff a Kenalog injection. The Defendants attached the Plaintiff's relevant medical records to their motion for summary judgment, which reveals that he did not suffer any bruises, swelling, cuts or bleeding from the incident.

The Court's review of the medical records confirm that Nurse Martin examined the Plaintiff on August 9, 2011. The Plaintiff denied respiratory difficulty. He complained about the left side of his neck, left shoulder and left knee and added that he was already suing the State over this. Nurse Martin did not observe and injuries. He referred the Plaintiff to a medical provider. The Plaintiff submitted a sick call on August 23, 2011. He was examined by Dr. James A. Smith on that day. The

Plaintiff was examined for complaints regarding chronic neck, left elbow and left knee pain that had been present intermittently for years. It started hurting again after the use of force incident. Dr. Smith's analysis was "Chronic dorsal spine pain likely secondary to arthritis. Chronic left elbow and left knee pain likely secondary to degenerative joint disease." He prescribed ibuprofen and a Kenalog injection.

The specific facts attributed to Anderson are in dispute, but drawing all reasonable inferences in the Plaintiff's favor, the Court concludes that his injuries were minor and essentially aggravated preexisting injuries. Viewing his injuries in the context of the force that was used, the Court finds that his injuries were *de minimis* and that Anderson's actions were not repugnant to the conscience of mankind. *See Dilworth v. West*, 20 F.3d 465 (5th Cir. 1994) (unpublished table decision) (an elbow to the chest and slap to the face were *de minimis*). Anderson is entitled to summary judgment because the Plaintiff has not shown a violation of his constitutional rights.

The Plaintiff also complained that he was the victim of excessive use of force in that Phillips struck him on the elbow with a metal food slot bar and spat in his face. The competent summary judgment evidence shows that Phillips was not even there. Nonetheless, drawing all reasonable inferences in the Plaintiff's favor, the Court concludes that the actions attributed to Phillips did not rise to the level of a constitutional violation and that his injuries were *de minimis*. *Id. Also see Hurd v. Beale*, 60 F.3d 822 (4th Cir. 1995) (unpublished table decision); *Johnson v. Ruiz*, No. 3:11-cv-542, 2012 WL 90159 (D. Conn. Jan. 10, 2012) (both cases finding that spitting on an inmate was *de minimis*). Phillips is entitled to summary judgment because the Plaintiff has not shown a violation of his constitutional rights.

The Defendants also argued that they are entitled to summary judgment with respect to the Plaintiff's retaliation claims. Even though it was previously found that the retaliation claims should be dismissed as unexhausted, the Court feels compelled to discuss whether such claims should alternatively be dismissed on summary judgment. To prevail on a § 1983 claim for retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must show that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). He must show more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Finally, the retaliatory adverse act must be more than a *de minimis* act. *Morris v. Powell*,

*supra*. In *Morris*, the Fifth Circuit held that a job transfer from the commissary to the kitchen was *de minimis*, while a transfer to a more dangerous unit was a sufficiently adverse retaliatory act. 449 F.3d at 687. An inmate does not have a basis for a retaliation claim based on mere threats, which are not sufficient to qualify as a retaliatory adverse act. *See Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). *See also Bell v. Woods*, No. 09-41000, 2010 WL 2545421 (5th Cir. June 18, 2010).

Anderson persuasively argued that the Plaintiff failed to satisfy the first step in a retaliation claim. Even though the Plaintiff has First Amendment rights, Anderson argued that the Plaintiff failed to show how he exercised a First Amendment right. He noted that the Plaintiff alleged (1) in 2005, he informed Warden Reescano Anderson's sister involvement with another inmate, and (2) in 2009, he wrote a statement to officials that Anderson assaulted an inmate. He argued that this does not satisfy the first step in light of *Peters v. Quarterman*, 252 Fed. Appx. 705, 706 (5th Cir. 2007). In that case, the inmate argued that he received a disciplinary case in retaliation for threatening to expose a female officer for her alleged inappropriate relationship with another inmate and her alleged smuggling of contraband to that offender. The Fifth Circuit found that the threat did not show that he exercised the First Amendment right to file a grievance or seek legal action. The threat was not an exercise of a specific constitutional right. In this case, the Plaintiff likewise failed to identify the exercise of a specific constitutional right. The Plaintiff did not satisfy the first step in a retaliation claim.

Anderson also argued that the Plaintiff has not shown that he had a retaliatory intent. The Plaintiff has shown nothing more than a conclusory claim of retaliation based on his personal belief that he was the victim of retaliation. Moreover, he has not even shown that Anderson knew about the events that purportedly occurred in 2005 and 2009.

Anderson next persuasively argued that the Plaintiff has not shown that he engaged in an adverse retaliatory act that was more than *de minimis*. Finally, the Plaintiff failed to show causation. He failed to show that Anderson would not have engaged in his actions on August 9, 2011 "but for" the actions he took in 2005 and 2009. Overall, Anderson is entitled to summary judgment with respect to the retaliation claim because the Plaintiff failed to satisfy all of the elements of a retaliation claim.

The same thing is true with respect to the Plaintiff's retaliation claim against Phillips. The Plaintiff alleged that Phillips retaliated against him for reporting him for accepting food from an inmate. Phillips persuasively argued that the Plaintiff failed to show that he exercised a specific and clearly established constitutional right as this falls outside of the right to file grievances or lawsuits. Second, the Plaintiff failed to show retaliatory intent or causation. Among other things, he failed to show that Phillips even knew that he reported him. The Plaintiff did nothing to connect the alleged retaliatory acts to reporting Phillips in 2010. Third, the Plaintiff failed to connect Phillips to the alleged retaliatory acts. He did not show that Phillips gave him the job changes. He failed to show that Phillips issued orders to have his cell searched. Phillips noted that he did not work for fourteen straight days to even be in a position to order cell searches for fourteen straight days. With respect to confiscation of property, the property records reveal that Officers Stowe and Johnson confiscated the Plaintiff's property on August 10, 2011. Finally, the Plaintiff failed to show that Phillips engaged in retaliatory adverse act that were more than *de minimis* acts. Overall, Phillips is entitled to summary judgment with respect to the retaliation claim because the Plaintiff failed to satisfy all of the elements of a retaliation claim.

The Defendants argued that they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity protects government officials performing discretionary

functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). Government employees are presumptively entitled to the defense of qualified immunity. Once asserted, the burden shifts to a plaintiff to demonstrate that qualified immunity does not bar their recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). Under the traditional approach, a court must first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id. See also Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citations omitted). The Fifth Circuit has specified that the issue for a court's consideration with respect to the second step is whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Short v. West*, 662 F.3d 320, 325 (5th Cir. 2011) (citations omitted). Conclusory allegations of wrong-doing fail to satisfy both the first and second requirement. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988). More recently, the Supreme Court held that a case may be dismissed based on either step in the qualified immunity analysis: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular

case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Short v. West*, 662 F.3d 320, 325 (5th Cir. 2011).

In order to rebut a defendant's qualified immunity defense in the context of an excessive use of force claim, a plaintiff must establish that (1) the official's allegedly wrongful conduct was excessive force in violation of the Eighth Amendment and (2) genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Mosley v. White*, 464 Fed. Appx. 206, 213 (5th Cir. 2010). The Defendants are entitled to summary judgment based on qualified immunity because their allegedly wrongful conduct did not rise to the level of an Eighth Amendment excessive use of force claim. They are entitled to summary judgment based on the first step alone. They are also entitled to summary judgment based on qualified immunity in light of the second step because the Plaintiff has not shown that their conduct was objectively unreasonable in light of clearly established law. The Defendants are entitled to summary judgment based on either step in the qualified immunity analysis.

The Defendants are likewise entitled to summary judgment based on qualified immunity with respect to the Plaintiff's retaliation claims. As previously explained, the Plaintiff failed to show that they engaged in a violation of his constitutional rights. The Defendants are entitled to summary judgment based on qualified immunity for that reason alone. Secondly, the Plaintiff failed to show that their actions were objectively unreasonable in light of clearly established law.

The last issue for consideration is Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th

Cir. 1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

The Defendants correctly argued that they may not be sued in their official capacity for damages. The Plaintiff responded by asserting that he was not suing them in their official capacities; instead, he was suing them only in their individual capacities. Consequently, the issue is moot. It is therefore

**ORDERED** that the Plaintiff's claims other than his excessive use of force claims are **DISMISSED** with prejudice for failure to state a claim, predicated on a failure to exhaust, pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that the Defendants' motion for summary judgment (docket entry #45) is **GRANTED** and the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **29** day of **October, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE